UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DORIAN FURLOW, et al.,            )
                                 )
       Plaintiffs,               )
                                 )
   vs.                           )          Case No. 4:23-CV-00059 AGF
                                 )
TWIN CITY FIRE INSURANCE         )
COMPANY,                         )
                                 )
       Defendant.                )

## MEMORANDUM AND ORDER

This breach of contract action for underinsured motorist ("UIM") coverage is

before the Court on the cross motions (ECF Nos. 29 & 32) for summary judgment filed

by Plaintiffs[1] and Defendant Twin City Fire Insurance Co. ("Twin City").  For the

reasons set forth below, the Court will grant Twin City's motion and deny Plaintiffs'

motion.

## BACKGROUND

For the purpose of the motions before the Court, the facts as established by the

record are as follows.  On August 29, 2021, Decedent was operating a 2014 Kia Sorento

on Interstate 44 in the City of St. Louis, where she was involved in a vehicular accident

---

[1]      Plaintiffs are the next of kin of decedent Verilla Furlow ("Decedent"): her
children, Dorian Furlow and Eric Furlow; and the children of her deceased son, Courtney
Furlow, Sr. (who predeceased her), Courtez Furlow, Courtney Furlow, and Courtreauna
Furlow.  It is undisputed that Plaintiffs are the only members of the class entitled to bring
a wrongful death claim for the death of the decedent pursuant to Mo. Rev. Stat. §
537.080.

caused by the negligence of Angel Shields ("Shields").  This accident resulted in Decedent's death.  At the time, Decedent was the named insured on an automobile insurance policy (the "Twin City Policy") issued by Twin City that was in effect on the date of the accident and covered Decedent's 2014 Kia Sorrento involved in that accident. The Twin City Policy provided an endorsement for UIM bodily injury coverage.

Plaintiffs entered a settlement agreement with Shields and her insurance company, Geico Casualty Company.  Shields's Geico Casualty Company insurance policy (the "Geico Policy"), which was operative at the time of the accident here, provided liability coverage in the maximum amount of $100,000.  Plaintiffs received the $100,000 Geico Policy limit as a result of this settlement.  However, the parties have stipulated that Plaintiffs would be legally entitled to recover more than $200,000 from Shields in compensatory damages.  ECF No. 26.

Plaintiffs thus made a demand for UIM coverage under the Twin City Policy, which contained a limit of liability in the amount of $100,000 per person and $300,000 per accident.  Twin City denied Plaintiffs' demand, and this lawsuit followed.[2]

The relevant provisions of the Twin City Policy are as follows:

### COVERAGE DEFINITIONS:

Underinsured Motorists Coverage pays benefits for bodily injury or death caused by an underinsured driver whose Bodily Injury Liability limits are less than your Underinsured Motorists Coverage limits and are inadequate to cover bodily injury losses you are legally entitled to recover as damages.

ECF No. 33-1, Twin City Policy at 6.

---

[2]     Twin City removed the case from state court, invoking this Court's diversity jurisdiction.  The only claim remaining is for breach of contract.

## INSURING AGREEMENT

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

    1.  Sustained by an **insured**; and

    2.  Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.

We will pay under this coverage only if **1.** or **2.** below applies:

    1.  The limits of liability under any bodily injury liability bonds or policies applicable to the **underinsured motor vehicle** have been exhausted by payment of judgment or settlements; or

    2.  A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

        a.  Have been given prompt written notice of such tentative settlement; and

        b.  Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

ECF No. 33-1, Twin City Policy at 19 (emphasis in original).

C. **"Underinsured motor vehicle"** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the insured is legally entitled to recover as damages.

ECF No. 33-1, Twin City Policy at 19 (emphasis in original).

## LIMIT OF LIABILITY

A. The Limit of Liability shown in the Declarations for Underinsured Motorists Coverage is for reference purposes only; under no circumstances do we have a duty to pay the entire Limit of Liability

stated in the Declarations for this coverage.  The Limit of Liability shown in the Declarations for each person for Underinsured Motorists Coverage, less all sums paid by those who may be legally responsible, is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident.  Subject to this limit for each person, the Limit of Liability shown in the Declarations for each accident for Underinsured Motorists Coverage, less all sums paid by those who may be legally responsible, is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B.  The limits of Liability shall be reduced by all sums paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible.  This includes all sums paid under Part **A** of this Policy.

C.   We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

ECF No. 33-1, Twin City Policy at 20 (emphasis in original).

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Subject to all other provisions of this policy, including, but not limited to:

4

   a.  Exclusion **A.** of this endorsement;

   b.  Paragraph **A.** of the **LIMIT OF LIABILITY** provision of
       this endorsement;

   c.  Paragraph **1.** of the **OTHER INSURANCE** provision of
       this endorsement; and

   d.  The **TWO OR MORE AUTO POLICIES** provision of
       this policy;

any insurance we provide with respect to a vehicle you do not own, including
any vehicle while used as a temporary substitute for **your covered auto**, shall
be excess over any collectible insurance providing such coverage on a
primary basis.

ECF No. 33-1, Twin City Policy at 20.

The parties have now filed cross motions for summary judgment.  Twin City

asserts that summary judgment must be entered in its favor because Plaintiffs received

$100,000 from the Geico Policy, which after applying the set-off provisions, left nothing

payable under the Twin City Policy.

Plaintiffs seek summary judgment in their favor on the basis that other provisions

of the Twin City Policy render the policy ambiguous, and that such ambiguities must be

interpreted in favor of Plaintiffs such that the set-off provision should not apply.

Specifically, Plaintiffs point to the language "Insurance Agreement" and "Other

Insurance" provisions, which Plaintiffs argue would lead an ordinary person of average

understanding to expect UIM coverage with no set-off.

The Parties do not dispute the facts of this case. The sole dispute is whether the

set-off provision applies.

5

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record.  *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).  The movant is entitled to summary judgment when the non-movant has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003).

"Interpretation of an insurance policy is a matter of state law."  *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citation omitted).  "The provisions of an insurance policy are read in the context of the policy as a whole."  *Columbia Mut. Ins. Co. v. Shauf*, 967 S.W.2d 74, 77 (Mo. 1998).  When deciding matters governed by state law, federal courts sitting in diversity are bound by the decisions of the state's highest court, and "[w]here no Missouri Supreme Court precedent exists on an issue, we predict what that court would decide and consider intermediate appellate court decisions in that process."  *Am. Family Mut. Ins. Co., S.I. v. Mid-Am. Grain Distribs., LLC*, 958 F.3d 748, 751–52 (8th Cir. 2020) (citation omitted).

6

In Missouri, there is no statutory requirement that an automotive insurance contract contain UIM coverage, so its existence is determined by the contract entered into between the parties. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. 1991). Under Missouri law, general rules of contract construction apply when interpreting an insurance policy. *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Emps. Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007).

If ambiguity exists, the Court must interpret the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. "'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions.'" *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (quoting *Seeck*, 212 S.W.3d at 132). "Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions.'" *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017) (citations omitted). The Court must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance[.]" *Seeck*, 212 S.W.3d at 132 (internal quotations marks and citation omitted). "'A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning.'" *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016) (quoting *Atlas Rsrv. Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)).

The Twin City Policy's Limit of Liability provision unambiguously provides that Twin City will pay up to the declarations' listed amount ($100,000) minus what is paid by the underinsured motorist's policy.  Thus, Plaintiffs' recovery of $100,000 from the Geico Policy left nothing to payable under the Twin City Policy.[3]

The other provisions highlighted by Plaintiffs do not render this provision ambiguous.  The Insuring Agreement's general promise to pay compensatory damages recoverable from the driver of an underinsured vehicle does not contradict or otherwise render unclear the Limit of Liability provision and must be read together with that provision.  As the Missouri Supreme Court held when rejecting a similar argument:

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Swadley*, 513 S.W.3d at 357–58 (cleaned up and citation omitted).

---

3       Further, under the Twin City Policy's Coverage Definitions provision, UIM coverage only "pays benefits for bodily injury or death caused by an underinsured driver whose Bodily Injury Liability limits are less than your Underinsured Motorists Coverage limits . . . ."  ECF No. 33-1, Twin City Policy at 6.  Because it is undisputed that Shields's bodily injury liability limits under her Geico Policy were equal to, and not less than, the UIM coverage limit under the Twin City Policy, the Twin City Policy's UIM coverage would not pay benefits here.  *See Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. 2017) (upholding as unambiguous a "policy's definition of 'underinsured motor vehicle' [that] restricts UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit").

The Limit of Liability provision also makes clear that the maximum amount shown in the Declarations page for UIM coverage is "for reference purposes only" and "under no circumstances do we have a duty to pay the entire Limit of Liability stated in the Declarations for this coverage."  ECF No. 33-1, Twin City Policy at 20.  *See  Owners*, 514 S.W.3d at 618 (holding that similar language made clear that the "declarations' listed limit amount serves only as a reference point for use with the set-off provisions, which are likewise unambiguous").

Neither does the Other Insurance provision render the Limit of Liability provision ambiguous.  Indeed, the Other Insurance provision expressly states that it is "subject to" the Limit of Liability provision, a caveat missing from the provisions at issue in the cases relied upon by Plaintiffs.  *Compare* ECF No. 33-1, Twin City Policy at 20, *with Seeck*, 212 S.W.3d at 132–33 (concluding that an "Other Insurance" provision that lacked such "subject to" language created an ambiguity when read together with a set-off provision).

 "An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole."  *Owners*, 514 S.W.3d at 617.  In *Owners*, the Supreme Court of Missouri found a set-off provision similar to the provision in the Twin City Policy unambiguous and enforceable.  *Id.* at 615.  The policy in that case provided that the UIM policy limit:

shall not exceed the lowest of:

(1) the amount by which the Underinsured Motorist Coverage Limits of Liability stated in the Declarations exceed the total limits of all bodily injury

9

liability bonds and liability insurance policies available to the owner or operator of the underinsured automobile; or

(2) the amount by which compensatory damages, including but not limited to loss of consortium, because of bodily injury exceed the total limits of all bodily injury liability bonds and liability insurance policies available to the owner or operator of the underinsured automobile.

*Id.* at 615–16 (quoting policy language).  The court found that "[t]his language clearly provides that [the insurer] will pay the declarations' listed limit amount minus what is paid by the underinsured motorist's policy if damages exceed the declarations' listed limit amount, or damages minus what is paid by the underinsured motorist's policy if damages do not exceed the declarations' listed limit amount." *Id.* at 616.

The Twin City Policy's set-off provision is arguably even more clear, as it provides that the UIM policy limit "shall be reduced by all sums paid because of the bodily injury by or on behalf of persons . . . who may be legally responsible."   ECF No. 33-1, Twin City Policy at 20.   This set-off provision is unambiguous and enforceable.

Finally, the set-off provision does not render UIM coverage illusory, as Plaintiffs argue.  If the Geico Policy had a lower limit of liability insurance, Plaintiffs would be entitled to recover the difference between that lower limit and the Twin City UIM policy limit of $100,000.  As Plaintiffs recognize, that was the result in *Owners*.  *See Owners*, 514 S.W.3d at 615–16 (applying a set-off provision and awarding the insured the difference between the at-fault driver's policy limit of $50,000 and the insured's UIM policy limit of $250,000).  That the at-fault driver's policy limit in this particular case equaled the Twin City UIM policy limit does not render the Twin City Policy illusory.

In short, the Court concludes that the Twin City Policy's language unambiguously provides that Plaintiffs' UIM coverage under the Twin City Policy is limited by their recovery under the Geico Policy and that Plaintiffs are not entitled to payment from Twin City.  Therefore, Twin City is entitled to summary judgment on Plaintiffs' complaint.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Twin City Fire Insurance Co.'s motion for summary judgment is **GRANTED**.  ECF No. 29.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment is **DENIED**.  ECF No. 32.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January, 2024.